R. Bruce Rich
WEIL, GOTSHAL & MANGES, LLP
767 5th Ave.
New York, NY  10153
(212) 310-8170

Attorneys for Petitioner
NBC Universal, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09 Civ. 1831

------------------------------------------------------------x

NBC UNIVERSAL, INC.,

                     Petitioner,

-against-

BROADCAST MUSIC, INC.

                     Respondent.

------------------------------------------------------------x

09 Civ. _____ (LLS)

*Related to United States v. Broadcast Music, Inc., 64 Civ. 3787 (LLS)*

**NBC UNIVERSAL'S PETITION FOR DETERMINATION OF REASONABLE LICENSE FEES FOR THE NBC BROADCAST NETWORK AND AFFILIATED INTERNET AND WIRELESS TRANSMISSIONS**

Petitioner NBC Universal, Inc. ("NBC" or "Petitioner"), by its attorneys, Weil, Gotshal & Manges, LLP, hereby seeks an order from the Court, pursuant to Section XIV(B) of the BMI consent decree, setting reasonable fees and terms for licenses authorizing, on a through-to-the-viewer basis, performances of music in the BMI repertoire made by the NBC television network (the "Network"), Internet websites affiliated with the Network, and mobile, wireless, and other "new media" transmissions of Network programming.

This Petition covers performances made in the United States between January 1, 2005, and December 31, 2012. The parties' previous fee agreement expired December 31, 2004. Since that time, NBC has continued to pay, on an interim basis, an annual license fee equal to the fee it paid to BMI in 2004. However, as of 2005, NBC Network revenues declined dramatically. As widely reported in the press at the time, and as BMI well knows, in the 2005

upfront advertising sales season "the [NBC] network was thrown for a projected loss of nearly $1 billion in advertising revenue" (Andrew Wallenstein, *NBCU Tightens Belt Post Upfront Loss*, MediaWeek.com, Aug. 16, 2005) when "NBC's prime time upfront sales dropped from $2.9 billion [in 2004] to $1.9 billion" (John M. Higgins, *ABC: An Upfront Spoiler?*, Broadcasting & Cable, July 11, 2005). (*See also* Stuart Elliott, *NBC lowering Rates on Commercial Time for 2005-6 Season*, New York Times, June 7, 2005; Michael Learmonth, *NBC's Upfront Falls 30%*, Daily Variety, June 21, 2005; *Upfront Finale: NBC Takes a Hit, UPN Eyes Gains*, MediaWeek.com, June 27, 2005.)

The steep decline in Network revenues during the new license period (post December 31, 2004) renders the previous annual fee level unreasonable and unsustainable. NBC therefore requests that the Court determine reasonable final fees for the performance of BMI music on the Network for the period January 1, 2005, to December 31, 2012, at a level significantly lower than the previous fees. NBC also requests that the fees include an adjustable credit or "carve-out" from the blanket license fee for performances of compositions by NBC that are directly licensed to NBC by the copyright owners. Finally, NBC requests that the Court set interim fees for the period beginning January 1, 2005, in accordance with the provisions of Article XIV(B) of the BMI Consent Decree, so as to afford NBC immediate and necessary relief pending the determination of final fees.

Pursuant to the Order of Judge Stanton dated April 25, 2001 in <u>United States</u> v. <u>Broadcast Music, Inc.</u>, 64 Civ. 3787, NBC brings this proceeding by separate petition and notes that this proceeding is related to 64 Civ. 3787.

## The Parties

1. Petitioner NBC, a media and entertainment company 80% owned by General Electric Company and 20% owned by Vivendi Universal S.A, is engaged in the production and

distribution of film and television programming. NBC operates the NBC Television Network, which broadcasts network programming to 10 owned and operated television stations and more than 200 independently owned affiliates across the United States, reaching an estimated 99 percent of all homes in the country.

2. Petitioner also operates NBC.com, the Network website, which promotes the Network and provides streamed episodes of Network programs, which have dedicated web pages available through the NBC.com website.

3. Apart from the offerings on NBC.com, NBC also offers Network programming to consumers via various other "new media" platforms, including: video-on-demand (pursuant to agreements with cable and direct-broadcast-satellite television providers); on-demand digital streaming (through third-party websites); and wireless devices (primarily mobile phones) pursuant to arrangements with third-party carriers.

4. Upon information and belief, Respondent BMI is a music performing rights licensing organization, with its headquarters at 320 West 57th Street, New York, NY 10019. BMI is a New York corporation that operates on a non-profit basis.

### Prior Dealings Between the Parties

5. NBC has been a BMI licensee for decades. NBC's two most recent agreements with BMI – covering the years 1997-2000 and 2001-2004, respectively – provided for the payment of annual lump-sum fees. Although the lump-sum fees differed somewhat under each agreement, NBC's payments expressed as a percentage of network revenue (exclusive of revenues generated by NBC's periodic coverage of the Olympics) remained relatively steady during the 1997 to 2004 period.

6. On December 3, 2004, NBC sent a letter to BMI requesting a blanket license for the Network, effective January 1, 2005. While the parties negotiated fees for 2005 forward, NBC agreed to pay BMI, on an interim basis, an annual fee equal to the payment in 2004, the last year of the parties' prior agreement.

7. Despite good-faith efforts by each side, the parties have been unable to reach an agreement on fees, necessitating the filing of this Petition.

### Fixed Fees from a Prior Period Are No Longer Reasonable Given NBC's Changed Economic Circumstances

8. Since the expiration of the previous NBC-BMI license agreement in 2004, NBC has experienced a dramatic decline in Network revenue. While NBC revenues remained fairly constant between 1997 and 2004, it was reported in the press that "the network was thrown for a projected loss of nearly $1 billion in advertising revenue" during the spring 2005 "upfront" sales season. (Andrew Wallenstein, *NBCU Tightens Belt Post Upfront Loss,* MediaWeek.com, Aug. 16, 2005.) This widely publicized falloff signaled the start of a period of much-reduced Network revenue which covers the licensing period at issue in this proceeding.

9. In light of such decline and more recent economic conditions, the fixed annual fee that NBC has been paying BMI on an interim basis – a fee equal to that paid by NBC in 2004 – is unreasonable. The effective rate that NBC is paying (the fixed annual fee expressed as a percentage of NBC's current non-Olympic revenue) is fully 39% percent higher than the average effective rate paid by NBC during the 1997-2004 period.

10. Upon information and belief, NBC has not increased its use of BMI music in any way that might justify such an increase in the effective rate paid by NBC. Nor can such an increase be justified by the revenue associated with the availability of NBC network programming on new media platforms, which is minimal relative to Network revenues.

11. NBC requests that the Court set a reasonable and lower final fee that, in addition to the changed economic circumstances described above, takes into account other factors to be demonstrated at trial, including the lack of competition to BMI for its blanket license, and the appropriateness of a "carve-out" fee mechanism that will provide credits to NBC for performances of BMI-affiliated music that NBC licenses directly from copyright owners.

12. NBC also seeks an interim fee reduction retroactive to January 1, 2005, and continuing until a final fee determination has been rendered, to reflect the deep decline in Network revenue and changed circumstances that have occurred since the expiration of the parties' last license agreement.

## Jurisdiction

13. Jurisdiction is proper in this Court pursuant to the Court's rate-setting authority under Article XIV of the BMI Consent Decree. United States v. Broadcast Music, Inc., 1966 Trade Cas. (CCH) ¶ 71,941 (S.D.N.Y.), as amended by 1996-1 Trade Cas. (CCH) ¶ 71,378 (S.D.N.Y. 1994 (the "BMI Consent Decree").

14. Pursuant to Article XIV of the BMI Consent Decree, the Court has jurisdiction over the instant Petition because: (i) NBC has made written application for a reasonable fee pursuant to Article XIV of the BMI Consent Decree; (ii) BMI has advised NBC of the fee it deems reasonable for the licenses requested; and (iii) more than 90 days have passed since BMI advised NBC of the fee it deemed reasonable, and BMI has not made a filing in this Court seeking determination of a reasonable fee. Accordingly, NBC may, pursuant to Article XIV of the BMI Consent Decree, seek this Court's determination of reasonable interim and final license fees with respect to NBC.

## Relief/Determination Requested

1. Wherefore, NBC respectfully requests that the Court determine reasonable final fees for the performance of BMI music on the Network, on its affiliated websites, and through other new media transmissions for the period January 1, 2005 to December 31, 2012, including a carve-out for directly licensed performances of BMI-affiliated music.

2. NBC further requests that the Court set interim license fees for the performance of BMI music on the Network, on its affiliated websites, and through other new media transmissions of Network programming for the period beginning January 1, 2005, to restore a reasonable and equitable economic posture between the parties until final fees in this matter will have been adjudicated.

New York, New York
February 26, 2009

_____
R. Bruce Rich (RR 0313)
Todd D. Larson (TL 1125)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Petitioner NBC Universal, Inc.*